❒ Original          ❒ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.23-1808M(NJ) |
| The Cellular Telephone Assigned | ) |
| Call Number (414) 921-8723 | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 10/20/2023 _____ *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____ 04/03/2024 _____ .

Date and time issued: 10/6/2023 @ 2:47 p.m. _____

*Judge's signature*

City and state:   Milwaukee, WI _____          Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number (**414) 921-8723** (referred to herein and in Attachment B as "the Target Cell Phone"), that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2.      The Target Cell Phone.

## ATTACHMENT B

## Particular Things to be Seized

## I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period **February 1, 2023, to the present:**

   i.   Names (including subscriber names, usernames, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

1

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records, and

    ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period February 1, 2023, to the present including:

        a. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        b. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

    i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii. Source and destination telephone numbers;

    iii. Date, time, and duration of communication; and

    iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT,

2

True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, involving Kenneth ROBY and others known and unknown from February 1, 2023, to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency

3

personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. 23-1808M(NJ) |
| | ) |
| The Cellular Telephone Assigned | ) |
| Call Number (414) 921-8723 | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Distribution of and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _180_ days *(give exact ending date if more than 30 days:* 04/03/2024 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SEAN MAYERBOCK (Affiliate)  Digitally signed by SEAN MAYERBOCK (Affiliate)
Date: 2023.10.05 15:26:51 -05'00'

*Applicant's signature*

Sean Mayerbock, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 10/6/2023 _____

*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

I, Sean Mayerbock, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(414) 921-8723** ("**Target Cell Phone**"), and known to be used by Kenneth ROBY, whose service provider is T-Mobile, a wireless telephone service provider ("Service Provider") headquartered at 4 Sylvan Way, Parsippany, New Jersey. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Detective with the City of Brookfield Police Department and have been a sworn law enforcement officer for over 8 years.  I am currently assigned to the North Central High Intensity Drug Trafficking Area (HIDTA) – Drug Gang Task Force. HIDTA is composed of law enforcement officers from the Milwaukee Police Department

2

(MPD), Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), and several other federal and local law enforcement agencies. Since November 2019, I have been a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses. As a federal law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency, and other evidence of criminal activity.

4. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses that specialized in the investigation of narcotics trafficking. Through these investigations, my

3

training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

5.     This affidavit is based upon my personal knowledge, training, experience, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

7.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 846 (conspiracy to distribute an possession with intent to distribute controlled substances) have been committed, are being committed, and/or will be committed by Kenneth P. ROBY (DOB: xx/xx/1963). There is also probable cause to believe that the location information described in Attachment B will constitute evidence

4

of these criminal violations and will lead to the identification of other individuals who are engaged in the commission of these offenses.

8.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.     In August 2023, the North Central High Intensity Drug Trafficking Area (HIDTA) initiated a drug investigation involving the trafficking of cocaine and fentanyl from the area of Bellwood, Illinois to Milwaukee, Wisconsin via vehicle transportation.

10.     The investigation to date has included traditional law enforcement methods, including but not limited to: interviews with a confidential source/source of information; information from other law enforcement officers; documentary evidence; telephone toll data; physical and electronic surveillance.

11.     In August 2023, a confidential source, hereinafter referred to as CS-1, identified Kenneth ROBY as a multi-kilogram level cocaine trafficker. CS-1 stated that ROBY is married to "Deb" who CS-1 believed had the same last name of ROBY. Case agents later found ROBY was married to Debra D. ROBY (DOB: xx/xx/1964). CS-1 informed case agents that CS-1 has personally purchased large amounts of cocaine from ROBY. CS-1 stated that ROBY resides with his wife in the area of N. 51st Boulevard and W. Congress Street in Milwaukee, Wisconsin. Case agents later identified that ROBY resides at 4338 N. 51st Boulevard, Milwaukee, Wisconsin, which is the same area as N.

5

51st Boulevard and W. Congress Street as referenced by CS-1. CS-1 stated the most narcotics that CS-1 has personally observed ROBY to be in possession of was three kilograms of cocaine. CS-1 stated CS-1 saw this at ROBY's residence (4338 N. 51st Boulevard). CS-1 estimated that ROBY is selling 10-15 kilograms a month based on conversations CS-1 has personally had with ROBY and based upon CS-1's personal observations. CS-1 stated CS-1 purchased one-half kilogram of cocaine from ROBY for $12,000 in July 2023 and saw ROBY with a full kilogram of cocaine in this same month. CS-1 informed case agents that ROBY prefers to speak about narcotics trafficking in person.  Based on their training and experience, case agents know that experienced narcotics dealers often avoid talking about illegal activity, overtly or otherwise, to avoid law enforcement detection in the event that investigators are monitoring phone calls through a Title III court-authorized wiretap. CS-1 stated ROBY drives a black Cadillac Escalade. Case agents later identified a black 2008 Cadillac Escalade bearing WI registration AKW-9111 listing to ROBY's wife (Debra ROBY) at 4338 N. 51st Boulevard. CS-1 was shown a WI DOT photo of ROBY, and CS-1 positively identified the individual depicted therein as ROBY. CS-1 provided ROBY's phone number to case agents, identifying it as **(414) 921-8723** (herein referred to as the **Target Cell Phone**). According to phone records, between June 23, 2023, and August 8, 2023, CS-1 had over 50 contacts with the **Target Cell Phone**, thereby confirming the relationship between CS-1 and ROBY.

12.     CS-1 has been providing information since August of 2023. The information CS-1 has provided is against CS-1's penal interest. The information

provided by CS-1 is consistent with evidence obtained elsewhere in this investigation where CS-1 was not used, and much of CS-1's information has been corroborated through independent investigation, including law enforcement records, toll records, and other confidential sources. CS-1 is cooperating for consideration relating to state charges for drug trafficking and possession of a firearm by a felon. CS-1 has been convicted of multiple felonies, to include multiple felonies for narcotics trafficking and firearms. Finally, CS-1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CS-1 is credible and CS-1's information reliable.

13.    CS-1 stated that ROBY is supplied cocaine from two brothers who own/operate "Bar 1000" located on Teutonia Avenue near Capitol Drive. CS-1 described the bar as newly remodeled and renamed. Case agents located a picture of "Bar 1000" located at 3941 N. Teutonia Avenue, and CS-1 confirmed this was indeed the bar from where ROBY obtains cocaine. Case agents later identified Myron BEA (DOB: xx/xx/1977) and Timothy BEA (DOB: xx/xx/1984) as the brothers who operate "Bar 1000." CS-1 stated that, based upon conversations between CS-1 and ROBY, ROBY is charged $19,000 for one kilogram of cocaine from the BEA brothers at Bar 1000. Case agents believe that the BEA brothers are operating a drug trafficking organization (BEA Brothers DTO) and are distributing large quantities of controlled substances.

14.    Through investigation, case agents became aware that DEA began investigating the BEA Brothers DTO in approximately 2017. Historical information

7

gathered during this earlier DEA investigation was based, in part, on information provided by Raymond L. GILLIAM (DOB: xx/xx/1973), who is no longer cooperating with law enforcement. GILLIAM was arrested on January 17, 2017, after officers conducted a consent search of his residence and located narcotics and firearms. Located at his residence were approximately 533 grams of cocaine, approximately 116 grams of heroin, approximately 163 grams of an unknown substance, U.S. currency, and two firearms. GILLIAM provided a *Mirandized* interview with case agents and told investigators that he was supplied cocaine and heroin by two separate narcotics dealers from Chicago who he identified as "Fat Dog" and "Money Red." GILLIAM stated that he got a half "bird" (one-half kilogram) from "Fat Dog" two days earlier. According to GILLIAM, "Fat Dog" usually picked up ten kilograms of cocaine and two kilograms of heroin from an unknown Mexican source. GILLIAM also said that he believed Fat Dog's real name is Myron and he was from Bellwood Illinois.   Investigators identified "Fat Dog" as Myron BEA (DOB xx/xx/1977) from 1129 S. 23rd Street, Bellwood, Illinois. GILLIAM was later shown a photograph of Myron BEA and GILLIAM positively identified Myron BEA as the person GILLIAM knew as "Fat Dog." According to GILLIAM, Myron BEA traveled to Wisconsin every Friday afternoon/early evening to meet with his family who resided in Milwaukee. GILLIAM said that BEA always arrived in his large white SUV. GILLIAM stated that BEA traveled directly to a family bar that is located on Teutonia Avenue just south of Capitol Drive. The family bar GILLIAM discussed was identified as "Gee Gee's," which is now known as Bar 1000.

8

15.     When GILLIAM provided this information, law enforcement officers corroborated much of GILLIAM's information through electronic and physical surveillance. On February 28, 2017, a court order was signed by a Milwaukee County Circuit Court Judge authorizing the tracking of the location for cellular phone number (312) 609-9564, the number used by Myron BEA at the time.  The location information associated with Myron BEA's cell phone reflected that Myron BEA resided in Bellwood, Illinois and frequently traveled to Milwaukee, Wisconsin. Specifically, case agents observed Myron BEA traveling to Wisconsin on Friday, March 3, 2017, and then back to Illinois on Sunday, March 5, 2017. During the next week, BEA again traveled to Milwaukee, Wisconsin on a Friday and back in the Chicago-land area on Sunday. Case agents continued to identify a similar pattern of travel for BEA during the location monitoring period.  On April 23, 2017, case agents observed BEA at "Gee Gee's" (now named Bar 1000). While conducting surveillance, several vehicles with Illinois license plates began showing up at the bar. Case agents observed upwards of 10 vehicles surrounding the bar area. Later during surveillance, Myron BEA left the bar with several other individuals. Myron BEA received an escort from two SUVs as he left the bar and stopped at a gas station on Teutonia Avenue. After leaving the gas station, Myron BEA was escorted by the two SUVs as BEA traveled south on I-43 towards Illinois. Case agents believed Myron BEA was being escorted to deter any interdiction traffic stops by law enforcement because Myron BEA likely had drugs or drug proceeds in his vehicle.

9

16.     Case agents know that Myron BEA still has a listed address of 1129 S. 23rd Avenue, Bellwood, Illinois, and case agents identified Myron BEA's current phone number as (708) 595-2088.

17.     GILLIAM began cooperating with law enforcement in January 2017, and continued to provide information against his penal interest until approximately January 2022. As stated above, GILLIAM's information was corroborated by surveillance, toll records, and law enforcement databases. The SOI's criminal history includes felony convictions for Felony Murder/PTAC, Possession with Intent Cocaine (>40g-100g) and misdemeanor convictions for battery. GILLIAM provided information for consideration relating to state charges for Possession with Intent Cocaine (>40g) with use of a Dangerous Weapon and Possession with Intent/Deliver Narcotics, both with a modifier of Party to a Crime. *See State of Wisconsin v. Raymond L. Gilliam*, Milwaukee County Case Number 2021CF000348. GILLIAM has not received consideration for the information provided because the above case remains open. Since approximately January 2022, GILLIAM stopped cooperating, and a bench warrant was issued on June 27, 2022.

18.     In May 2023, law enforcement officers received information from a confidential source (herein referred to as CS-2) regarding ROBY. CS-2 identified ROBY by ROBY's alias, "Wood." CS-2 described ROBY as a black male, approximately 54 years old, 6'00, 150 pounds, bald, clean shaven, light skin, and looks older than he is. CS-2 stated ROBY drives a black Cadillac Escalade 2008 – 2009 with Wisconsin license plates and light tinting. CS-2 stated that ROBY gets "bricks" or kilos of cocaine, which CS-2 referred to as a "whole Bird." Based on their training and experience, case agents know

10

the term "bird" is often used by narcotics dealers to refer to a kilogram of narcotics. CS-2 stated ROBY "breaks them down" (kilograms of cocaine) into ounces and sells them. CS-2 stated CS-2 bought at least an ounce at a time from ROBY, usually for the amount of $800 U.S. cash currency, and only bought ounces of cocaine at a time. CS-2 provided a photograph of a license plate attached to the rear of a black Cadillac bearing WI registration AKW-9111 and identified this as the vehicle that belongs to ROBY. Additionally, when showed a photo of ROBY, CS-2 positively identified ROBY.

19. CS-2 has been providing information intermittently since 2016. The information CS-2 has provided is against CS-2's penal interest. The information provided by CS-2 is consistent with evidence obtained elsewhere in this investigation where CS-2 was not used, and much of CS-2's information has been corroborated through independent investigation, including law enforcement records and toll records. CS-2 is cooperating for consideration relating to a drug trafficking and firearms charges. CS-2 has also provided information regarding drug traffickers who operate in the City of Milwaukee area, and CS-2's information, in part, has led directly to the seizure of at least two firearms and a large amount of marijuana. Finally, CS-2 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CS-2 is credible and CS-2's information reliable.

20. Phone toll information for the **Target Cell Phone** between June 17, 2023, and August 27, 2023, reflects the following contacts during this time frame:

11

a. ROBY was in contact with Debra ROBY (at phone number 414-484-3485) approximately 117 times from June 17, 2023, and August 27, 2023;

b. ROBY was in contact with Myron BEA (at phone number 708-595-2088) approximately 9 times from June 17, 2023 – August 11, 2023;

c. ROBY was in contact with Phyllis ROBY, ROBY's sister (at phone number 414-520-3088) approximately 10 times from July 3, 2023 – August 25, 2023[1]; and

d. ROBY was in contact with a suspected cell phone of Timothy BEA (414-779-8446) 1 time on July 17, 2023.

21.  On September 7, 2023, the Honorable Stephen C. Dries, United States Magistrate Judge signed and approved a pen register on the **Target Cell Phone**. Case agents began receiving call/text data from **Target Cell Phone** on September 8, 2023. Case agents observed a top contact was Phyllis ROBY with 34 contacts from September 9, 2023, through October 2, 2023. Additionally, case agents observed that ROBY was in contact with Myron BEA's known phone number of (708) 595-2088 on three occasions between October 1, 2023, and October 3, 2023.

22.  While no subscriber information is listed for the **Target Cell Phone**, the above-identified contacts, as well as CS-1's information and previous contacts with CS-1, leads case agents to believe that ROBY is the user of the **Target Cell Phone**, as he uses it to talk to his wife, his sister, and his narcotics sources of supply.

23.  On October 2, 2023, case agents conducted surveillance operations at ROBY's known residence of 4338 N. 51st Boulevard. Case agents observed ROBY's 2008 black Cadillac Escalade bearing WI registration AKW-9111 parked across the street from

---

[1] CS-1 stated that CS-1 believed that ROBY may stash money and/or narcotics at Phyllis ROBY's house. Phyllis ROBY 's DOT address is 5074 N. 22nd Street, Milwaukee, Wisconsin.

the residence, due to construction. At approximately 9:57 a.m., case agents observed ROBY exit the residence, cross the street, and enter the driver's seat of the black Cadillac Escalade. ROBY quickly exited the driver's seat of the vehicle and proceeded to access the back seat area of the vehicle before closing all doors and proceeding back into the residence.

24. On October 3, 2023, case agents conducted surveillance operations at ROBY's residence, 4338 N. 51st Boulevard. The black Cadillac Escalade was parked in front of the residence facing north. At approximately 3:17 p.m., ROBY exited the residence and proceeded to get into the black Cadillac Escalade. ROBY was followed to the address of 3069 N. 45th Street, which is a duplex residence. Case agents were unable to determine who ROBY met with; however, within five minutes ROBY re-entered the black Cadillac Escalade and proceeded to drive away. Surveillance was terminated.

25. Thereafter, case agents learned that before arriving to the 45th Street address, or at approximately 2:55 p.m., ROBY, using the **Target Cell Phone**, made an outgoing call to phone number (414) 243-2338, believed to be used by Sonny JOHNSON. According to law enforcement databases, phone number (414) 243-2338 lists to JOHNSON on CashApp. The name listed is "Sonny" with the handle of "$MrJohnson5990." Additionally, on this CashApp account there is a photo of JOHNSON, which photograph investigators confirmed was JOHNSON based on a comparison with a Wisconsin DOT photo of JOHNSON. According to law enforcement databases, Sonny JOHNSON is associated with the address of 3947 N. Teutonia Avenue, Apt. #1, which is located directly next to Bar 1000. Case agents, through observation of

13

electronic surveillance at Bar 1000, determined a connection between Bar 1000 located at 3941 N. Teutonia Avenue and the apartment complex directly next to Bar 1000, 3947 N. Teutonia Ave. On multiple occasions, case agents have observed individuals, including Timothy BEA, traveling between the two addresses.

26.     On October 4, 2023, case agents conducted surveillance operations at 2636 S. 76th Street, West Allis, Wisconsin, which is a known address for Timothy BEA. At approximately 1:50 p.m., case agents observed Timothy BEA, wearing a white t-shirt with "Bar 1000" printed on it, enter the driver's seat of a brown Infiniti SUV bearing WI registration ALE-4379. Investigators followed Timothy BEA before losing the vehicle and terminating surveillance.

27.     On October 5, 2023, case agents reviewed electronic surveillance in the rear of Bar 1000 from October 4, 2023. Case agents observed Timothy BEA pull into the back of Bar 1000 in the brown Infinity at approximately 4:17 p.m.  At 5:39 p.m., Timothy BEA and an unknown M/B exited the bar and Timothy BEA proceeded to the brown Infinity. Timothy BEA opened the front passenger door of the brown Infinity and leaned into the vehicle.  Concurrently, case agents observed what is believed to be ROBY's black Cadillac Escalade pull into the back of Bar 1000 (case agents were unable to observe the license plate of the black Cadillac Escalade, however, the vehicle's wheels, rims, trim, and smaller features matched to the known black Cadillac Escalade that ROBY drives). From the brown Infinity, Timothy BEA acknowledged the driver of the black Cadillac and proceeded to walk over to the black Cadillac Escalade. Based on the angle of surveillance, no exchanges were observed at this time. Approximately 30 seconds later,

14

Timothy BEA walked back to the brown Infinity and opened up the front passenger door while the black Cadillac Escalade stayed in its location. Timothy BEA proceeded to walk back to the black Cadillac Escalade, however, did not appear to be holding anything. Approximately 40 seconds later, Timothy BEA walked back to the brown Infinity with his hands in his pockets and proceeded to grab a cell phone from the front passenger seat. Timothy BEA walked back to the black Cadillac Escalade and the two appeared to be exchanging numbers. At 5:42 p.m., the black Cadillac Escalade left the area. The operator of the Cadillac Escalade never exited the vehicle during the interaction with Timothy BEA.

28.     Additionally, on October 4, 2023, at 1:20 p.m., case agents observed that ROBY, using **Target Cell Phone**, called Myron BEA, using phone number (708) 595-2088. At 4:45 p.m., ROBY, using the **Target Cell Phone,** called Myron BEA again. Based upon the recent frequency of calls between ROBY and Myron BEA, and the belief that ROBY went to Bar 1000 to briefly meet with Timothy BEA and did not patronize the business, case agents believe based on their training and experience that ROBY went to Bar 1000 to facilitate his drug trafficking activities.

29.     ROBY is a convicted felon and has a criminal history that includes a conviction for 1st Degree Recklessly Endangering Safety and multiple drug-related convictions.

## CONCLUSION

30.     Evidence obtained during this investigation leads case agents to believe that ROBY operates the **Target Cell Phone**. The location data associated with the **Target**

15

**Cell Phone** will assist case agents in conducting targeted physical surveillance and further identify the locations and individuals associated with and the nature and scope of ROBY's drug trafficking activities.

31. Case agents searched law enforcement databases to confirm that **Target Cell Phone** is currently being serviced by T-Mobile.

32. Case agents are requesting this warrant authorizing the initial collection of data related to the **Target Cell Phone** for **30** days to further investigate ROBY's activities, and to identify locations to which ROBY is traveling to further his drug distribution trafficking activities.

33. Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that ROBY is engaged in the trafficking and distribution of controlled substances and is using the **Target Cell Phone** while engaged in these crimes. I further submit that probable cause exists to believe that obtaining the location information of the **Target Cell Phone** will assist case agents in determining ROBY's criminal activities, to include meeting locations, co-conspirators, and sources of supply.

34. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that

16

allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

35.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

36.     Based on my training and experience, I know that T-Mobile can collect data based upon its precision location tool, which T-Mobile refers to as WebMap. I further know that many service providers can collect timing advance or engineering data, commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent). For example, RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

### E-911 Phase II / GPS Location Data

37.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II

18

data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available.

### Subscriber Information

38.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone**'s user or users and may assist in the identification of co-conspirators and/or victims.

### AUTHORIZATION REQUEST

39.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

40.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

41.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

42.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **180 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize

the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

43. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

21

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number (**414) 921-8723** (referred to herein and in Attachment B as "the Target Cell Phone"), that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2.      The Target Cell Phone.

Case 2:23-mj-01808-NJ     Filed 10/06/23     Page 29 of 35     Document 1

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period **February 1, 2023, to the present:**

   i.   Names (including subscriber names, usernames, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long-distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

1

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records, and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period February 1, 2023, to the present including:

a. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT,

2

True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, involving Kenneth ROBY and others known and unknown from February 1, 2023, to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency

3

personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by T-Mobile, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of T-Mobile. The attached records consist of _____.

I further state that:

a.      All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of T-Mobile and they were made by T-Mobile as a regular practice; and

b.      Such records were generated by T-Mobile's electronic process or system that produces an accurate result, to wit:

1.      The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of T-Mobile in a manner to ensure that they are true duplicates of the original records; and

2.      The process or system is regularly verified by T-Mobile and at all

times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                                     Signature